UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA J. KEETON, *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> COUNTRYWIDE HOME LOANS, INC., *et al.*, <br><br> **Defendants.** | Civil Action No. 16-1623 (JEB) |

**MEMORANDUM OPINION**

Plaintiffs Barbara Keeton and Wilbert Keeton, Jr. are waging a desperate battle to retain possession of their family home. In support of that effort, they have pursued this multi-year litigation against several lending entities to challenge the validity of the loan that has put their property in jeopardy of foreclosure. The Keetons recently added a new Defendant, Specialized Loan Servicing LLC, to this mix, alleging that the Company has violated the Fair Debt Collection Practices Act since taking over their loan servicing in 2014. Having removed the case to federal court, SLS now moves to dismiss these FDCPA claims on several grounds. As the Court concludes that the claims are defective, but not necessarily beyond repair, it will dismiss SLS without prejudice and give the Keetons a brief opportunity to see if they can fix the deficiencies with another amended complaint.

**I.     Background**

The Court, as it must at this stage, draws the facts from Plaintiffs' Second Amended Complaint and treats them as true. Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). Plaintiffs are an elderly married couple who own a home at 5303 13th Street, NW,

Washington, D.C.  See ECF No. 1-1 (Second Amended Complaint), ¶¶ 1, 7-8.  Wilbert, the sole breadwinner, hit a rough patch in his business during the economic downturn in 2006.  Id., ¶ 10. At the same time, Barbara experienced a serious flare-up in her rare lung condition, causing her to be hospitalized around Thanksgiving Day with double pneumonia.  Id., ¶ 11.  Her condition was so dire that she fell into a coma during her months-long stay in the hospital.  Id., ¶ 12.  She did not regain consciousness again until January 2007, at which time she remained heavily medicated and dependent on medical equipment to eat and breathe.  Id., ¶¶ 14-17.

   Drowning in this sea of despair, Wilbert desperately seized at a life raft that appeared in the form of a telephone solicitation from a Countrywide Home Loans, Inc., loan officer in January 2007.  Id., ¶¶ 13, 18.  Over several conversations, the loan officer convinced Wilbert that he could solve the Keetons' growing financial woes through a loan and an equity line of credit both to be secured by their family home.  Id., ¶ 19.  Wilbert initially protested that his wife was deathly ill and could not possibly consent to encumbering her share of their house, but the loan officer pushed on, assuring him that Barbara could simply be left off the necessary loan documents.  Id., ¶¶ 21-22.  Wilbert, yearning for the respite, filled out the loan application that same month.  Id., ¶ 24.

   A few weeks later, in February 2007, the loan officer and Wilbert visited the Rehabilitation Center where Barbara remained hospitalized to sign additional loan forms with the assistance of a notary public.  Id., ¶¶ 25-26.  Barbara, however, was so heavily sedated that the Countrywide officer had to direct Wilbert to assist her in signing the documents.  Id., ¶ 27. Though Barbara herself had no idea what she was signing, these agreements effectively divested her of her full rights in their shared home.  Id., at 2, ¶¶ 28-29.  The loan was settled shortly thereafter in her absence, leaving Wilbert free to finalize a home-equity line of credit as well.

Id., ¶¶ 33-34.

Although Barbara later got out of the hospital – also in February 2007 – she remained heavily medicated and sedated for much of the year. Id., ¶¶ 31-32. Two years later, in 2009, she continued to be physically weak and thus was unable to participate in a modification of the home loan that Wilbert secured from the new holder of the mortgage, Bank of America. Id., ¶¶ 37-38. Barbara, in fact, could not communicate fully again until 2011, when she tried to help her husband seek another modification of the loan. Id., ¶¶ 39-40. The bank, however, refused to speak with her about it. Id., ¶ 41.

In February 2012, the Keetons retained counsel to assist them with their mortgage woes. Id., ¶ 42. Barbara only then learned that the bank would not discuss the loan with her because she was not a party to it and may have signed documents in the hospital that changed her rights to the property. Id., ¶¶ 43-44. A year and a half later, the Keetons also received a letter from the Department of Justice that indicated Countrywide may have discriminated against Barbara by requiring her to execute the mortgage-related documents. Id., ¶ 45.

On May 29, 2014, the Keetons filed a Complaint in the Superior Court for the District of Columbia, accusing Bank of America, Countrywide, and another lending subsidiary of various unlawful actions in relation to the loan and equity line of credit. Id., ¶ 47. A short time later, they also learned that Bank of America had "transferred their loan to Defendant SLS." Id., ¶ 48.

At some subsequent date, SLS contacted the Keetons directly in an effort to collect payment on the home loan. Id., ¶ 49. Over the next two years, SLS and the Keetons also unsuccessfully attempted to work out another loan modification. Id., ¶¶ 50-51. When those negotiations finally collapsed, Plaintiffs filed a Second Amended Complaint to join SLS as a Defendant in the ongoing action against the lenders, accusing the Company of violating the

FDCPA through its efforts to collect on the loan. Id., ¶¶ 77-81. SLS immediately removed the case to this Court and now moves to dismiss the sole FDCPA count against it. See ECF Nos. 1 (Notice of Removal), 6 (Motion to Dismiss). That Motion is now ripe.

## II.     Legal Standard

The Federal Rules of Civil Procedure require a plaintiff to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where such a complaint fails "to state a claim upon which relief can be granted." In evaluating a Rule 12(b)(6) motion, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted). The pleading rules are "not meant to impose a great burden," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are thus not necessary. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint, however, "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). The facts instead "must be enough to raise a right to relief above the speculative level" even if "recovery is very remote and unlikely." Twombly, 550 U.S. at 555-56 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.   Analysis**

In seeking dismissal of the FDCPA claims against it, SLS essentially throws everything but the kitchen sink at the Complaint. More specifically, the Company asserts that the relief requested by Plaintiffs is not available under the statute, SLS is not sufficiently alleged to be a debt collector subject to the FDCPA, the claims are time-barred, most of the claims are inadequately pled, and, finally, it is prejudiced by being joined as a Defendant at this late date. The Court takes up each of these arguments in the sections that follow. Because it ultimately concludes that the Complaint must be dismissed for its failure to sufficiently allege that SLS is a debt collector, however, the last three issues receive only abbreviated treatment.

   A.   Requested Relief

Plaintiffs seek several types of relief against SLS in their latest Complaint, including an injunction barring foreclosure or transfer of the loan, punitive damages, and treble damages. See Sec. Am. Compl. at 13. SLS first asserts that, because none of this relief is available under the FDCPA, the sole count against the Company must be dismissed. Plaintiffs do not contest that these types of relief are beyond their reach, only that this does not warrant dismissal. See Opp. at 5 (contesting only whether Complaint requests actual damages in addition to equitable relief and punitive or treble damages).

This implicit concession is for good reason. The FDCPA provides that private parties are limited to actions for "any actual damages sustained by such person as a result of [a debt collector's] failure" to comply with the Act, "such additional damages as the court may allow, but not exceeding $1,000," and costs and reasonable attorney fees. See 15 U.S.C. § 1692k(a) (emphasis added); see also Sibley v. Fulton DeKalb Collection Service, 677 F.2d 830, 834 (11th Cir. 1982) ("[E]quitable relief is not available to an individual under the civil liability section of

the Act."); Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 977 n.39 (5th Cir. 2000) (collecting cases for same). To the extent, then, that the Complaint seeks the aforementioned additional forms of relief from SLS, the Company is correct that those remedial requests contained in the FDCPA count must be dismissed.

The Company is not correct, however, that this fatally dooms the Keetons' claims against it. The Court is convinced, as Plaintiffs argue, that the Complaint sufficiently indicates that they are also seeking actual damages, which are available under the statute. It would, after all, be quite a feat to treble damages that have not first been determined to exist. As such, this first attack on the Complaint does not warrant complete dismissal of the FDCPA count.

### B. SLS as Debt Collector

Defendant next argues that the Complaint fails to allege sufficient facts, even if true, to establish that it qualifies as a debt collector under the FDCPA. See Mot. at 6-8; Reply at 4-6. That Act "regulates interactions between consumer debtors and debt collectors." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 577 (2010) (alterations, quotation marks, and citation omitted). To qualify as a "debt collector," a person must be "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Several types of debt collection, however, are exempt from this otherwise broad definition, including "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement . . . [or] (iii) concerns a debt which was not in default at the time it was obtained by such person." Id. § 1692a(6)(F).

According to SLS, the Complaint does not adequately allege that it qualifies under the statute's broad definition of a debt collector or, alternatively, plead that the Company's debt-collection efforts here are not otherwise excluded under the two exemptions listed above. The first of these arguments is plainly without merit. (And also not raised until its Reply.) While the Complaint makes very few factual allegations in regard to SLS, Plaintiffs do assert that the Company "is a national mortgage servicer specializing in servicing single family residential mortgages" and that it sought to collect the debt from the Plaintiffs. See Sec. Am. Compl., ¶¶ 5, 49. As this Court recently held in a similar case, such an allegation is insufficient to establish that a company's "principal purpose" is the collection of debt, but it nevertheless suffices to indicate that the entity is a debt collector under the statute's second definitional prong – *i.e.*, a person "who regularly collects or attempts to collect" debts owed or due another. Mohamed v. Select Portfolio Servicing, Inc., No. 15-1016, 2016 WL 6108409, at *7 (D.D.C. Oct. 19, 2016). The Complaint thus sufficiently alleges that SLS falls within the initial broad definition of a debt collector found in the statute.

SLS has a second argument, though – namely, that the Complaint fails to allege that the Company's activities here qualified it as a debt collector because the statute's exemptions exclude debt collection (1) subject to a bona fide fiduciary obligation or (2) in relation to a debt that was not in default at the time that it was obtained. See Mot. at 6-8. As to the former, SLS asserts that a "mortgage servicer's fiduciary obligation to the owner of the debt . . . provides the servicer with its exemption" from the FDCPA. Id. at 6. Indeed, the Company cites a string of cases in an effort to show that loan servicers are never subject to FDCPA liability pursuant to the "bona fide fiduciary" exemption. Id. at 6-8 (citing 15 U.S.C. § 1692a(6)(F)(i)).

7

SLS neglects, however, to read the relevant statutory language and case law carefully in making this argument. The FDCPA excludes debt collection that is "incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F)(i). This exemption does not extend to entities where the debt-collection activities are "central to, or the primary purpose of," the entity's fiduciary obligations. Harris v. Liberty Cmty. Mgmt., Inc., 702 F.3d 1298, 1302 (11th Cir. 2012) (holding property-management company with wide-ranging fiduciary obligations to homeowner's association fell under exemption where it incidentally sought to collect dues owed to association). The Court cannot conclude as a matter of law that SLS's debt collection here is incidental to its fiduciary obligation.

The cases that SLS cites in support of a more sweeping exemption for loan servicers, moreover, stand only for the much more limited proposition that loan servicers are often exempt because they seek to collect on loans that were not in default at the time the servicer obtained them. See, e.g., Scott v. Wells Fargo Home Mortg. Inc., 326 F. Supp. 2d 709, 718 (E.D. Va. 2003) (stating broadly that "law is well-settled . . . that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA," but discussing servicers' exemption only in light of loan's default prior to time of transfer). There is no reason to believe, then, that SLS might fall within the bona-fide-fiduciary exemption merely via its status as a loan servicer.

That conclusion, of course, leaves open the possibility that the Complaint is nevertheless deficient on the second point discussed above. This concerns whether the Keetons have established that SLS is a debt collector where they have not alleged that their loan was in default, or that SLS treated the loan as such, at the time that the Company began servicing it. Numerous courts have found that the "FDCPA's definition of debt collector does not include . . . a mortgage

servicing company . . . so long as the debt was not in default at the time it was assigned" or treated by the servicer to be in default at such time. Nool v. HomeQ Servicing, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009); see also Brumberger v. Sallie Mae Servicing Corp., 84 Fed. Appx. 458, 459 (5th Cir. 2004) (*per curiam*) (affirming dismissal of FDCPA claim against loan servicer because "[b]y its plain terms the FDCPA does not apply" absent an allegation that plaintiff "was in default at the time Sallie Mae began servicing his loans"); Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 360 n.4 (6th Cir. 2012); Diaz v. Residential Credit Solutions, Inc., 297 F.R.D. 42, 49 (E.D.N.Y. 2014). Courts, accordingly, have dismissed FDCPA claims where plaintiffs failed to allege that a loan servicer was assigned the loan after it went into default. See, e.g., Casault v. Fed. Nat. Mortg. Ass'n, 915 F. Supp. 2d 1113, 1126 (C.D. Cal. Nov. 26, 2012); see also Edmond v. Am. Educ. Servs., No. 10-1578, 2010 WL 4269129, at *5 (D.D.C. Oct. 28, 2010). The Complaint here only summarily states that "SLS is a debt collector within the meaning of 15 U.S.C. § 1692(a)(6) [*sic*]." Compl., ¶ 78. It contains no supportive factual assertions that SLS either accepted the loan while it was in default or treated it to be so at that time.

Plaintiffs instead rejoin that the Court may reasonably infer this was the case because the Complaint alleges that they previously sought a loan modification from Bank of America and also sought one from SLS shortly after finding out that the loan had been transferred. See Opp. at 7-8; Sec. Am. Compl., ¶¶ 48-51. Concluding on these facts alone, however, that the loan was in default prior to 2014 calls for more than a fair inference. The Court instead would have to speculate that these modifications sought to cure a default, rather than to avoid one. Such guesswork is inappropriate even at the motion-to-dismiss stage. See Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (holding legal conclusions couched as factual allegations and inferences unsupported by facts are insufficient to survive motion to dismiss).

Because the Keetons may be able to allege sufficient facts, however, the Court will only dismiss the current Complaint, rather than the entire case, without prejudice in order to give them an opportunity to do so. See Ciralsky v. CIA, 355 F.3d 661, 666-67 (D.C. Cir. 2004) (distinguishing between dismissing action and dismissing complaint).

    C.  Time Bar & Sufficiency of Allegations

Defendant next presses two related attacks on the Complaint, maintaining that the allegations against the Company largely fail to state a claim under the FDCPA and, to the extent that they do, those claims are time-barred. Because this argument has some merit, the Court discusses it to allow the Keetons an opportunity to also cure these additional defects in the event that they choose to file an amended complaint against SLS.

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Among other things, the statute prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," id. § 1692e, and the use of "unfair or unconscionable means to collect or attempt to collect any debt." Id. § 1692f. Those who violate these proscriptions may be subject to administrative-enforcement actions, id. § 1692l(a), as well as private suits to recover actual and statutory damages. Id. § 1692k. A claim raised in a private suit is subject to a one-year statute of limitations from the time that the violation occurred. Id.

The Complaint here alleges that SLS violated the statute in five separate ways. See Sec. Am. Compl. at 12. Three of these violations appear to involve communications and actions concerning the transfer of the loan from Bank of America to SLS in 2014, in particular that the

Company: 1) "[d]eceptively and fraudulently accept[ed] Plaintiffs' loan from Defendant Bank of America for the sole purpose of undermining the judicial process and Plaintiffs' right to redress by this Honorable Court"; 2) "[d]eceptively and fraudulently accept[ed] Plaintiffs' loan from Defendant Bank of America to falsely represent or imply that Plaintiffs no longer have a claim or defense to payment of the debt"; and 3) "[f]alsely represent[ed] or impl[ied] in communications with Plaintiffs[] that Plaintiffs' loan has been legally transferred by Defendant Bank of America to Defendant SLS who is an innocent purchaser for value." Id. As these particular acts seem to have occurred well over a year before Plaintiffs amended their complaint to assert a claim against SLS, they are likely time-barred. See 15 U.S.C. § 1692k.

The two other violations that Plaintiffs assert against SLS, moreover, lack sufficient detail to state a claim under the FDCPA. The Complaint alleges that SLS violated the Act by "[c]ommunicating directly with Plaintiffs despite having knowledge that Plaintiffs are represented by legal counsel regarding the debt" and by "[c]ommunicating with the credit bureau agencies regarding Plaintiff Wilbert Keeton's debt without indicating that the debt is indeed disputed." Sec. Am. Compl. at 12. These allegations largely parrot particular FDCPA provisions, but contain no dates or other details about when, how, or to whom the unlawful communications were made. The first, in addition, does not even properly recite the statutory provision that it seeks to invoke, which requires that the debt collector also be able to readily ascertain or have knowledge of such attorney's name and address. See 15 U.S.C. § 1692c(a)(2). In fact, neither of these claims cites to any particular provision of the statute at all. At least one court in this district has found such a deficiency alone serves as sufficient grounds for the dismissal of FDCPA claims. See, e.g., Rivera v. Rosenberg & Assocs., LLC, 142 F. Supp. 3d

149, 159 (D.D.C. 2015) (collecting cases for same).  (The Court, of course, cannot know without more details whether these claims may also be subject to the time bar discussed above.)

Should Plaintiffs seek to file another amended complaint to proceed against SLS on these claims, then, they would be well advised to provide further factual details describing the unlawful communications, along with citations to the statutory provisions that such acts allegedly violate.  See Iqbal, 556 U.S. at 678 (explaining pleadings that offer "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do") (quoting Twombly, 550 U.S. at 555); see id. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Failure to do so may result in dismissal.

    D.  Prejudice

SLS finally argues that the Court should dismiss the count against it in its entirety because Plaintiffs waited two years from the time that the Company took over servicing the loan to add it as a Defendant in this action.  See Mot. 11-12.  SLS thus contends that it cannot procced without prejudice to its defenses as discovery recently closed.  Id.  Such prejudice, however, can be remedied by reopening discovery to SLS on a limited basis.  Should the Keetons successfully amend their complaint, rather than proceeding solely on the claims asserted against the other Defendants, the Court will assure that no discovery-related prejudice befalls SLS from Plaintiffs' delay.

**IV.  Conclusion**

For the reasons stated above, the Court will issue a contemporaneous Order dismissing the Second Amended Complaint as to SLS without prejudice.  Should Plaintiffs nevertheless wish to proceed against the Company, the Court will allow them two weeks to file a Third

Amended Complaint.  If Plaintiffs fail to amend by that time, the Court will remand the remainder of the case – that is, all but Count V of the Second Amended Complaint – to the District of Columbia Superior Court for further proceedings.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  November 14, 2016